**Charles E. HUMPHRIES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–688.**

Court of Criminal Appeals of Oklahoma.

March 17, 1975.

Hack Welch, Hugo, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Charles E. (Rusty) Humphries, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Choctaw County, Case No. CRF–74–1, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. His punishment was fixed at a term of not less than ten (10) years, nor more than life in the State Penitentiary, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, witness Watson testified that he observed J. D. Aulgur leaving the T. V. Lounge at 3:30 a. m. on December

23, 1973. The witness left the lounge ten minutes later and discovered that Mr. Aulgur had been shot. Donald Johnson, a specialist in pathology, testified that the deceased sustained a shotgun wound to the head.

Ethyl Manness, mother of the deceased, testified that her son and Georgia Humphries left together on December 22, 1973, to go to the T. V. Lounge.

Robert Cleveland testified that he was at the T. V. Lounge on December 22, 1973, and saw J. D. Aulgur there with a young woman. Later that evening, the witness was informed by Charles E. (Rusty) Humphries that she was his wife. Mr. Humphries, the witness testified, acted as if something was bothering him and said that he was going to leave the lounge. This occurred at approximately 10:30 p. m.

Bob Young, an employee of the T. V. Lounge, testified that he observed the defendant sitting in a pickup outside the lounge around 2:00 a. m., on December 23, 1973.

Sam Reeves, a deputy sheriff, testified that the defendant and his wife came to the police station and that Mr. Humphries said that he had killed a man with a shotgun.

The defendant's wife, Georgia Humphries, then testified that when J. D. Aulgur and she were about to depart the lounge in Mr. Aulgur's car, her husband approached them carrying a shotgun. Some words were exchanged between the two men and she tried to persuade her husband to put down the gun, but he looked at her as though he could not hear her. (Tr. 45) The defendant then shot J. D. Aulgur, got his wife, and they left.

Carol Parker, Chief of Police, testified that Exhibit No. 1 was the defendant's statement that he took after duly advising him of his Miranda rights. The statement, after the witness authenticated it, was introduced into evidence and read to the jury. The defendant stated therein, in substance, that he was looking for his wife, found her with J. D. Aulgur, waited for them to leave and when they did, approached them and shot J. D. Aulgur in the head. The State then concluded its case in chief.

Georgia Mae Humphries was again called and testified about her relationship with J. D. Aulgur during her separations from her husband. She testified that they had an affair each time she was separated from the defendant; that she confessed this to her husband and he "broke down and cried." (Tr. 70)

Charles Edward Humphries then took the stand and testified that he was waiting on his wife outside the T. V. Lounge, to persuade her to come back to him again. He further testified that he did not plan to kill J. D. Aulgur beforehand, but it just happened when he confronted them.

■ The defendant's first two assignments of error allege that the trial court erred when it overruled the defendant's efforts to cross-examine Ethel Manness and Georgia Mae Humphries about the relationship which existed between Georgia Mae Humphries and J. D. Aulgur. After careful examination of the record, this Court concludes that if any error occurred it was cured because the illicit relationship was fully explored by defendant when he later called Mrs. Humphries as his own witness. See Garcia v. State, Okl.Cr., 501 P.2d 1128 and Rogers v. State, 9 Okl.Cr. 277, 131 P. 941.

■ In the final two assignments of error, the defendant alleges the trial court erred when it permitted the State to cross-examine and lead its own witness, Mrs. Humphries, and erred again when it failed to instruct the jury that Mrs. Humphries' impeachment could only be considered as affecting the credibility of the witness and could not be considered as substantive evidence. Although the defendant cites authority in support of both contentions, we are of the opinion that we need not delve into the merits; suffice it to say that assuming arguendo, if the trial court erred, it was harmless error. The record has been carefully reviewed and it conclusively es-

tablishes, beyond a reasonable doubt, the guilt of the accused so that a jury could not have reached a different verdict had the alleged errors not occurred. Under the harmless error doctrine, as espoused in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705, and in 22 O.S. 1971, § 410, the errors alleged in the case at bar do not require reversal.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BRETT, P. J., concurs in results.

BLISS, J., concurs.